1 Michael J. Aguirre, Esq., SBN 060402
  Christopher S. Morris, Esq., SBN 163188
2 Maria C. Severson, Esq., SBN 173967
  AGUIRRE, MORRIS & SEVERSON LLP
3 444 West C Street, Suite 210
  San Diego, CA 92101
4 Telephone: (619) 876-5364
  Facsimile: (619) 876-5368

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUNDA BRUMMETT; GREG SISSON; THE ESTATE OF DANIEL SISSON,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; WILLIAM D. GORE; DOES 1-50, inclusive,<br><br>Defendants. | Case No. **'12CV1428 LAB BGS**<br><br>COMPLAINT FOR:<br><br>1. 42 U.S.C. § 1983 – 8th Amendment Cruel and Unusual Punishment<br>2. 42 U.S.C. § 1983 – 14th Amendment Due Process<br>3. Negligence<br>4. Failure to Summon Medical Care<br>5. Negligent Supervision, Training, Hiring and Retention<br>6. 42 U.S.C. § 1983 – Due Process – Deprivation of Familial Relationships<br>7. Wrongful Death |

COMPLAINT

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. JURISDICTION..................................................................................................3

III. THE PARTIES....................................................................................................3

IV. BACKGROUND FACTS ...................................................................................5

FIRST CAUSE OF ACTION .......................................................................................11
42 U.S.C. § 1983 – 8th Amendment Cruel and Unusual Punishment

SECOND CAUSE OF ACTION ..................................................................................12
42 U.S.C. § 1983 – 14th Amendment Due Process

THIRD CAUSE OF ACTION ......................................................................................13
Negligence

FOURTH CAUSE OF ACTION ..................................................................................13
Failure to Summon Medical Care

FIFTH CAUSE OF ACTION .......................................................................................14
Negligent Supervision, Training, Hiring and Retention

SIXTH CAUSE OF ACTION.......................................................................................14
42 U.S.C. § 1983 – Due Process – Deprivation of Familial Relationships

SEVENTH CAUSE OF ACTION ................................................................................15
Wrongful Death

PRAYER FOR RELIEF................................................................................................15

REQUEST FOR JURY .................................................................................................15



## I.
## INTRODUCTION

1. On January 23, 2011, Daniel Sisson and his mother put on their best clothes and got ready for court. Daniel and his mother walked into the Vista Courthouse expecting the worse. Daniel, who was already in a diversion program for drug possession, had just recently been arrested again. And, once again, Daniel had been found in possession of a controlled substance. Despite their fears, Daniel and his mother were determined to meet the latest charges head-on, hopeful that another stint in jail, under the care of the jail staff, might jump start yet another stab at sobriety. Two days later Daniel Sisson was dead. According to the coroner, Daniel's cause of death was "asphyxia due to asthma." Death by asthma asphyxiation is a slow and agonizing way to die. It is essentially a long and drawn out drowning.

2. Despite repeated requests, the County of San Diego has thus far refused to turn over any of the investigative documents related to this matter. The scant records produced by the San Diego County Coroner reveal that Daniel Sisson, the 21-year old son of Shaunda Brummett and Greg Sisson, and an active member of the San Diego surfing community, was left to die in his jail cell; unattended and without medical attention. Despite what appear to be repeated and vehement protestations from his cell mate, and despite the fact that jail personnel knew that he was a severe and chronic asthmatic who was withdrawing from heroin, Daniel's non-appearance at consecutive sick calls was met with callous indifference. By the time jail personnel took Daniel's cell mate's cries for help seriously and actually took the effort to walk into his cell and conduct a welfare check, Daniel had already been dead for hours.

///

3. Daniel's untimely death was the result of the deliberate indifference of the staff and personnel of the Vista Detention Facility ("VDF") to the acute medical needs of Daniel Sisson. Not only did jail staff refuse to take any steps to address the risks posed by opiate detoxification coupled with chronic asthma, this same staff simply ignored the obvious warning signs arising from their own observations of Daniel's condition. Only making matters worse, VDF staff simply chose to ignore the protestations from Daniel's cell mate who actually resorted to the posting of written pleas for help. This deliberate indifference was the natural and probable consequence of the policy, custom and practice of the San Diego County Sheriff's Department to house inmates undergoing heroin detoxification in general population without a detoxification protocol and without an individualized treatment plan from a physician. Only making matters worse, VDF staff was also failing to comply with California Code of Regulation Title 15, Section 1027 which requires hourly safety and welfare checks for all inmates, regardless of their individual medical needs. Instead, pursuant to this policy, detoxing inmates were left unsupervised, without individualized medical attention, and without the mandated hourly health and safety checks. This policy, and VDF personnel's deliberate indifference to Daniel's serious medical condition, led Daniel to suffer and die from an asthma attack; an attack which would have been easily treated had the required welfare checks been conducted and/or the obvious medical needs been heeded. Had VDF personnel simply complied with this provision, and/or heeded the obvious medical warning signs, Daniel Sisson would be alive today.

4. Daniel Sisson's only crime, like so many unfortunate others in our community, was that he suffered from addiction. Aside from his chronic asthma and addiction, Daniel was an otherwise healthy young man when he entered sheriff's custody at VDF. Daniel is dead because VDF personnel failed to address and deliberately ignored the serious medical complications posed by Daniel's condition. Staff knew or should have known that (1) withdrawal from heroin involves extreme levels of stress and respiratory issues that increase the likelihood of a serious asthma attack, (2) the deprivation of appropriate medical withdrawal medication made Daniel more susceptible to those stresses, (3) the absence of individualized treatment plan supervised by a physician posed a significant risk; (4) the absence of a sufficient policy to identify, monitor, and

2
COMPLAINT

treat Daniel's heroin detoxification process would set the stage for Daniel's heroin detoxification induced asthma attack, and (5) the failure to perform required safety checks placed inmates like Daniel at significant risk. Jail officials knew that Daniel was a chronic asthmatic and that he was susceptible to acute and severe asthma attacks. Jail officials also knew that Daniel was withdrawing from daily opiate use. Even though they had a full understanding of the risks presented by such a potentially deadly combination, jail officials acted with deliberate indifference to Daniel's medical needs. Asthma attacks are easily treatable and even a minimal level of care would have saved his life. Instead, Daniel is dead and his family is grieving.

5. Daniel's representatives and surviving family members file this action to hold defendants herein named responsible for the deprivation of Daniel's and their own constitutional rights and consequential wrongful death and for the loss of the love and companionship of their son.

## II.

## JURISDICTION

6. This is a lawsuit for money damages and is brought pursuant to 42 U.S.C. § 1983, et seq., and the Eighth and Fourteenth Amendments to the United States Constitution, for wrongful death and violation of constitutional rights by Defendant County of San Diego and its correctional officers. Jurisdiction is founded on 28 U.S.C. § 1331 and 1343 and the aforementioned statutory and Constitutional provisions. State law claims for wrongful death, negligence, failure to summon medical care, negligent supervision and training are alleged as well. Plaintiff invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to consider the state law claims.

## III.

## PARTIES

7. This action arises from the wrongful death of Daniel Sisson, who was at all times mentioned herein a resident of the County of San Diego, State of California. Plaintiff Shaunda Brummett is Daniel's mother. She is also a resident of the County of San Diego. She is the duly appointed Administrator and Personal Representative of the Estate of Daniel Sisson. The heirs of

the estate are Shaunda Brummett and Greg Sisson, Daniel's father.  Plaintiff Greg Sisson is also a resident of San Diego County.

8. Defendant County of San Diego ("County") is and at all times mentioned herein was a public entity authorized by law to establish certain departments responsible for enforcing the laws and protecting the welfare of the citizens of San Diego County. At all times mentioned herein, defendant County was responsible for overseeing the operation, management, and supervision of the Vista Detention Facility, Defendant San Diego County Sheriff's Department, Defendant Sheriff Gore, as well as the Sheriff's Deputies, Corrections Officers, and VDF Medical Staff.  The names of the individual Sheriff's Deputies, Corrections Officers, and VDF Medical Staff who were responsible for the care and custody of Daniel Sisson, and who were responsible for the implementation of policies and procedures designed to insure that the medical needs of the VDF inmates are adequately met, are currently unknown to plaintiffs.  As such, these individuals are sued herein as DOES 1-50.

9. Defendant San Diego County Sheriff's Department ("Sheriff's Department") is, and at all times mentioned herein was, a public entity responsible for providing law enforcement and detention services for Defendant County of San Diego (the "County"), including supervising, operating, and managing the Vista Detention Facility ("VDF").

10. Defendant William D. Gore is, and at all times herein mentioned was, Sheriff of Defendant County.  As such he is responsible for supervising, operating, and managing VDF.

11. The true names and capacities whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 50 are unknown to plaintiff, who therefore sue said defendants by said fictitious names. Plaintiffs will amend this complaint to show said defendants true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that all defendants sued herein as DOES are in some manner responsible for the acts and injuries alleged herein.

12. At all times mentioned herein defendants Gore and DOES 1 through 50 were employees of Defendant San Diego County and in doing the acts hereinafter described acted within the course and scope of their employment. The acts of all defendants and each of them

4

COMPLAINT

were also done under the color and pretense of the statutes, ordinances, and regulations of the County of San Diego and the State of California.

13. In committing the acts and/or omissions alleged herein, all defendants acted under color of authority and/or under color of law. Plaintiffs sue all public employees named as Defendants in both their individual and official capacities.

14. Shortly after the events alleged herein, plaintiffs filed a claim with the County of San Diego. On or about February 3, 2012, the claim was denied.

IV.

**BACKGROUND FACTS**

15. The Vista Detention Facility ("VDF") is an 886 bed Type II facility in Vista California and serves as the primary point of intake for male and female prisoners in northern San Diego County. On the morning of June 23, 2011, Daniel and his mother, Shaunda Brummett, arrived at the Vista Courthouse. Daniel, who was on probation for possession of a controlled substance, had recently been re-arrested after sheriff's deputies found Daniel in the possession of a controlled substance. Daniel and his mother waited all morning to be called and finally, just before noon, their case was called. Because Daniel was already on probation, he was remanded back into custody notwithstanding the fact that he has already posted bail on the new offense.

16. At 1605 hours, San Diego County law enforcement officials took Daniel into custody at VDF. Daniel's detention records, including an intake health screening, notes that Daniel had chronic bronchial asthma and a history of heroin use. According to the autopsy report, when Daniel was in custody on the underlying charge in December of 2010 he was treated for "at least one acute asthma attack" associated with opiate withdrawal. The autopsy report also notes that during his prior incarcerations in January, June, and November of 2010 and during his incarcerations in February and June of 2011, Daniel was treated "for chronic bronchial asthma and mild opiate withdrawal." Defendants knew that Daniel had a serious medical condition. The risks posed by a severe asthmatic going through heroin withdrawals are not only self-evident, but in Daniel's case, this deadly combination had previously manifested itself in the form of an acute asthma attack during his prior incarceration some six months earlier.

1    17.    At a minimum, Daniel's severe asthmatic medical condition coupled with opiate withdrawal required an individualized treatment plan from a physician. That individualized treatment plan would necessarily have included regular observation and a response plan should Daniel have another acute asthma attack. According to the records, at 6:31 am the following morning, Daniel was suffering from the symptoms of opiate withdrawal including diarrhea, vomiting, tremor, and dilated pupils. At that time, he told the medical staff that he had been using heroin every day. Medical staff simply prescribed him Tigan, an anti-nausea drug. Despite VDF's knowledge of Daniel's serious medical conditions, he was returned his cell in general population in which he would receive no additional individualized medical observation or attention. The only "specialized" treatment Daniel was given was an albuterol "rescue" inhaler for his asthma. And when deputies finally entered his cell to conduct a welfare check and found Daniel's lifeless body, this "rescue" inhaler was found in Daniel's bunk, next to his head.

18.    It was the policy, custom and practice of VDF to house inmates that require heroin detoxification in general population where their medical condition is not closely monitored. This heroin detoxification policy is grossly inadequate because inmates do not receive an individualized treatment plan to address specific health risks and because the inmates are housed in general population where their medical condition goes unsupervised. The California Correction Standards recognize the risk posed by inmates that enter correctional facilities under the influence of controlled substances. The California Correction Standards Authority mandates that, at minimum, intoxicated inmates posing a risk to themselves or others are to be placed in a "sober cell" and that their medical welfare is to be checked on at least every thirty minutes. Fully aware of, and deliberately indifferent to Daniel's serious heroin withdrawal and chronic asthmatic condition, VDF officers left Daniel to suffer, unsupervised, in his general population cell.

19.    Heroin and opiate detoxification is an agonizing process and frequently exacerbates preexisting medical conditions. Heroin withdrawal, beyond the nausea, vomiting, and diarrhea, causes stress and breathing difficulties and reduces an individual's ability to withstand asthmatic attacks. These withdrawal symptoms get stronger and usually peak around two to four days after the last use of the drug. According to the medical literature, medical attention must be

given to chronic medical conditions such as asthma because painful or difficult breathing often accompanies heroin withdrawal and, if respiratory health is left unmonitored, can lead to a fatal asthma attack.

20. It is clear from the records that during the night of June 23, 2011, heroin withdrawal symptoms began to set in as Daniel began to experience recurring episodes of vomiting, diarrhea, and tremors. The following morning at 0631 hours, Daniel was treated for these symptoms by VDF medical staff. At this time, Daniel explicitly told the deputy that he used heroin daily, but had refrained from telling the nurse during intake because he did not like the Vistaril he would be prescribed. Daniel was then prescribed and took the prescribed Tigan.

21. Following the early morning treatment by VDF officers, Daniel's unstable medical condition continued to worsen and frequent heroin detoxification symptoms of vomiting, diarrhea, and nausea continued. Because Daniel was reaching the "peak" of heroin withdrawal, his risk of complications due to existing chronic medical illness increased, and his condition was serious enough to confine Daniel to his cell bunk for the entire day. On the morning of 6/25/11, the last recorded interaction with VDF officers occurred at 1134 hours when Daniel, supine on his bunk as he had been the entire previous day, waved off his scheduled sick call appointment. For the second straight day, Daniel spent the day either vomiting or laying in his bunk. Notwithstanding VDF official's knowledge of Daniel's asthma coupled with obvious signs of heroin withdrawal, and in the face of the fact that Daniel had suffered an acute asthma attack while detoxing in jail some six months prior, VDF officials made absolutely no effort to enter his cell and check on his welfare. Instead, VDF officials remained deliberately indifferent to Daniel's serious and immediate medical condition and took no steps to provide Daniel with the medical care he so urgently needed.

22. Later that day, Daniel, who was at the critical "peak" period of his heroin withdrawal process, began to suffer from a heroin detoxification induced asthma attack that required prompt, appropriate, and responsive medical attention. Instead, VDF and its employees, agents, nurses, deputies, guards, and/or corrections officers, and the Defendant San Diego County Sheriff's Department, the Sheriff's Deputies, (collectively Defendant "County" or "VDF")

knowingly failed to properly address Daniel's need for appropriate and immediate medical care.

23. The records indicate that Daniel's cellmate was interviewed and a statement from him was taken. Despite repeated requests from Daniel's family, the San Diego County Sheriff's Department has refused to provide either the cellmate's statements or even his name. The only thing that is known of the cell mate is that he was extremely concerned about Daniel and took what appear to be heroic efforts to alert the staff that Daniel needed help. We know that Daniel's cellmate had desperately and repeatedly made efforts to convince VDF officers that Daniel was dying and in need of immediate medical attention because the reports do disclose that a sign from the cellmate was found in the cell. This sign is addressed "To America." According to the autopsy report, the sign "noted that the decedent had moved into the cell and that he was vomiting due to apparent heroin withdrawal." The cellmate's failed attempts to convince VDF officers to help Daniel highlight the acts of deliberate indifference by VDF officials towards Daniel's serious medical needs form part and parcel of the overall disturbing events of the day. Despite becoming aware of Daniel's serious and immediate medical needs, VDF officers continued to follow the policy, practice, and custom of leaving heroin detoxifying inmates to suffer in their cell, unsupervised, and without medical attention. VDF officers consistently and knowingly remained deliberately indifferent to Daniels escalating and serious medical condition.

24. Finally, and disturbingly too late, VDF deputies performed a welfare check on Daniel at 2010 hours on June 25, 2011. VDF officers arrived at Daniel's cell and found him "unresponsive" lying on his side in his bunk. With obvious signs of rigor, deputies removed Daniel's stiff and lifeless body from the cell and began "resuscitative efforts." Vista Fire Medics arrived just thirteen minutes later and immediately pronounced Daniel's death without further resuscitative efforts because of the obvious signs of rigor.

25. The autopsy report states that "the last time that anybody saw Daniel alive was at 1700 hours" on the day of his death. The report intentionally fails to disclose who it was that saw him alive, or how that person knew that Daniel was no longer alive past 1700. Thus, what appears to be intentionally omitted from the report is that Daniel's cellmate, after failing to get anybody to heed his requests, watched Daniel suffer and die and then sat with him for over three

hours until he could finally get somebody to listen to him.

26.     According to the medical literature, acute asthma attacks are not immediately fatal. Instead, acute asthma attacks can last anywhere from six to eight hours before causing expiration; and, expiration only occurs after the body is so oxygen deprived that it begins to shut down. Acute asthma attacks are easily treatable.  Rigor mortis does not set in until at least three hours after death, and reaches its peak stage around twelve hours after death. Daniel was dead for at least three hours before VDF officers found him and initiated their futile resuscitative efforts. And not only had Daniel been dead for at least three hours before VDF officers finally attended to him, but he had also been suffering from his heroin detoxification induced asthma attack for at least six hours prior to his death. This grossly disturbing period of at least nine hours exemplifies VDF's deliberate indifference to Daniel's health and welfare.

27.     Daniel's untimely death, and deprivation of constitutional rights, was caused by the utter failure of VDF staff to react to the obvious warning signs that Daniel was in a severe medical emergency.  This lack of response was the natural and probable consequence of a County policy which fosters the deliberate indifference to the medical needs of the inmates of VDF. Contrary to accepted medical practice, detoxing inmates are simply placed in general population, without medical supervision and without an individualized medical treatment plan.  Policymakers know that their jails and medical staff will encounter detoxing inmates with underlying chronic illnesses that are exacerbated by the withdrawal process, yet they fail to provide a screening system to identify and address these needs. The risk that Daniel's condition would deteriorate as a result of withdrawal from heroin was obvious, and the County manifested deliberate indifference to the matter. Daniel's known and obvious serious medical threat was not given any individualized treatment. His death is directly attributable to VDF's failure to examine, recognize, and address Daniel's progressively deteriorating asthmatic condition during his withdrawal from heroin.

28.     Further contributing to Daniel's unnecessary death was the County's custom, policy and practice to not perform the mandatory hourly inmate safety checks. Title 15, Section 1027 of the California Code of Regulations mandates that "at least hourly safety checks" are to be

9

COMPLAINT

performed by a sufficient number of correctional employees. According to the CCR, "Safety checks are intended to provide for the health and welfare of the inmates. This means that staff must be able to see each inmate without the aid of audiovisual equipment to assure that he/she is alive and not experiencing any trauma in order to consider that the intent of the regulation is met." Had VDF staff performed the safety checks as required, Daniel would not dead. Instead, there is but one documented interaction between Daniel and staff on the day of his death; and during that limited interaction staff ignored the obvious warning signs related to Daniel's condition. By the time Daniel's body was discovered, rigor had set in indicating that Daniel had been dead for hours. Thus, it is clear that VDF staff completely disregarded the mandate of Title 15, Section 1027 of the California Code of Regulations. On information and belief, the jail was understaffed and, those who were working followed the VDF custom and practice of performing the safety checks far less often than required. Cell checks are essential for the safety of inmates and, if VDF had performed them as required, a safety check would have saved Daniel's life.

29. The County knew that its policies regarding staffing and cell checks posed a substantial risk and County employees knew that not performing safety checks would affect the health and safety of chronically ill inmates. Through the County's decision not to fully staff the jail, and by condoning and ratifying the custom and practice of not performing required safety checks, the County ignored the substantial risk that inmate's health and safety would be jeopardized. The County's policies regarding cell checks and staffing were a moving force behind Daniel's death. If Daniel's welfare had been checked on or supervised through the heroin detoxification process, his medical emergency would have been addressed.

30. Daniel Sisson was an otherwise healthy, loving, and valuable member of the Sisson family. Little did his family know that on that fateful day he dressed up and went to court, he would not return. Daniel Sisson was remanded to custody because he violated the probationary terms related to *possession* for *personal* use. He was not sentenced to death. At a minimum, Daniel and his family trusted that jail staff would provide the medical care necessary to keep him alive. This, they failed to do. Daniel suffered a slow agonizing death; essentially drowning to death in his cell. Had staff heeded the red flags related to Daniel's condition, he

would not have suffered and died in his cell.  Had the County and VDF put into place policies and procedures designed to address the needs of inmates detoxing from opiate use, Daniel would be alive today and had VDF staff complied with Title 15, Section 1027 of the California Code of Regulations, Daniel would still be a part of the Sisson family.  Instead, due solely to the County's failures on various fronts, Daniel is dead.

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 – 8th Amendment Cruel and Unusual Punishment**

**[Against All Defendants]**

31.    Plaintiff realleges and incorporates by reference each and every allegation stated above as though fully set forth herein.

32.    In doing the acts and/or omissions herein alleged, defendants were deliberately indifferent to the serious medical needs of Daniel Sisson, which caused the unnecessary infliction of pain and physical injury on Daniel, resulting in his untimely death.  The actions and inactions of the VDF staff resulted in the violation of his rights under the Eighth Amendment of the United States Constitution.

33.    As a result of the VDF staff's deliberate indifference to plaintiff's serious medical needs, plaintiff was subjected to cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution. As a result thereof, plaintiff is entitled to damages pursuant to 42 U.S.C. § 1983 in an amount to be proven at trial.

34.    The aforementioned acts and/or omissions of defendants in violating plaintiff's civil rights were the direct and proximate result of policies, procedures and practices/customs of defendants, and each of them, as alleged herein.

35.    Such policies, procedures, and practices/customs include, but are not limited to, placing inmates needing medical treatment for heroin withdrawal in general population, without an individualized treatment plan, then leaving them unsupervised.  The County also failed to perform the hourly safety checks as prescribed by state law.

36.    Said defendants encouraged, ratified and/or approved of the acts and/or omissions alleged herein, and knew or should have known that such conduct was unjustified and would

1 | result in violations of constitutional rights.

2 |     37. The aforementioned acts and/or omissions of the defendants were malicious, reckless and/or accomplished with a conscious disregard of Daniel Sisson's rights thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – Deprivation of Life Without Due Process

### [Against All Defendants]

38. Plaintiff realleges and incorporates by reference each and every allegation stated above as though fully set forth herein.

39. As a result of the acts and omissions described above, including but not limited to: the failure to heed the warning signs related to Daniel's condition; the failure to provide an individualized treatment plan from a physician; the failure to adopt a policy that would provide for the health and welfare of detoxifying inmates instead of simply placing them in general population without any specialized care; and the failure to conduct the hourly face-to-face welfare checks mandated by the CCRs, defendants deprived Daniel Sisson of his health, strength, and activity, and ultimately his life, without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

40. The blatant and conscious disregard of Daniel Sisson's obvious and known serious medical conditions – including, but not limited to, unreasonable delays in providing treatment, lack of an adequate treatment procedure for inmates suffering from heroin withdrawal, lack of welfare checks, the refusal to respond to the cellmate's cries for help, and the subsequent abandonment of Daniel in is his cell until his demise, essentially transformed Daniel's short jail term into a death sentence.

41. The aforementioned acts and/or omissions of the defendants were malicious, reckless and/or accomplished with a conscious disregard of Daniel Sisson's rights thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

///

///

12
COMPLAINT

## THIRD CAUSE OF ACTION

### Negligence – California Government Code § 844.6(d)

### [Against All Defendants]

42. Plaintiff realleges and incorporates by reference each and every allegation stated above as though fully set forth herein.

43. Defendants, and each of them, have a duty to operate and manage the Vista Detention Facility in a manner so as to prevent the acts and/or omissions alleged herein. Said defendants owed Daniel Sisson, as an inmate in defendant's custody, care and control, a duty of due care to protect his health and physical safety.

44. Defendants were negligent and their conduct fell below a reasonable standard of care when they failed to discharge their duties as custodians and/or health care providers to Daniel Sisson. It was foreseeable that as a result of Defendant's acts and omissions, as described above, Daniel Sisson's asthma condition accompanied by heroin withdrawal would worsen, resulting in his physical injury, suffering, and death. Defendants' breach proximately caused injuries and damages to Daniel Sisson and plaintiffs as alleged herein.

## FOURTH CAUSE OF ACTION

### Failure to summon medical care

### [Against All Defendants]

45. Plaintiff realleges and incorporates by reference each and every allegation stated above as though fully set forth herein.

46. California Government Code § 845.6 creates an affirmative duty for jail officers "to furnish or obtain medical care for a prisoner in his custody." As alleged, Daniel Sisson's cellmate desperately and repeatedly attempted to convince VDF officers to summon medical care for Daniel. VDF staff had actual or constructive knowledge of Daniel's need for immediate medical care and deliberately chose to not furnish Daniel with medical care. Defendants failed to discharge the duty imposed upon them by California Government Code § 845.6. As a direct and proximate result of Defendant's acts and/or omissions, hereinabove described, Daniel Sisson suffered severe physical injury, resulting in his untimely death.

47. Defendants San Diego County, San Diego County Sheriff's Department, and Sheriff Gore are liable for their employees' breach of their duty to summon required immediate medical care while acting in the course and scope of their employment under the doctrine of respondeat superior.

## FIFTH CAUSE OF ACTION

### Negligent Supervision, Training, Hiring and Retention

### [Against All Defendants]

48. Defendants, and each of them, have a duty to hire, supervise, train and retain employees and/or agents so that its employees and/or agents refrain from the conduct alleged herein.

49. Defendants, and each of them, breached this duty causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training and retention under the laws of the State of California.

50. Such breach proximately caused damages and injuries to decedent and plaintiffs as alleged herein.

## COUNTS ON BEHALF OF DANIEL SISSON'S FAMILY MEMBERS

## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – Due Process – Deprivation of Familial Relationships

### [Against All Defendants]

51. Plaintiff realleges and incorporates by reference each and every allegation stated above as though fully set forth herein.

52. As a result of Defendants' acts and/or omissions hereinabove described, including defendants' deliberate indifference to Daniel Sisson's serious medical needs, Daniel's immediate family members were deprived of their constitutional right to familial association, society, and companionship, without due process of law, in violation of the Fourteenth Amendment of the United States Constitution.

/ / /

/ / /

## SEVENTH CAUSE OF ACTION

### Wrongful Death

### [Against All Defendants]

53. Plaintiff realleges and incorporates by reference each and every allegation stated above as though fully set forth herein.

54. As a result of the Vista Correctional Facility officer's deliberate indifference to plaintiff's serious medical needs, Daniel Sisson suffered a painful and untimely death.

55. By reason of Daniel Sisson's death, Daniel's heirs have suffered and continue to suffer loss of society, companionship, comfort, care, guidance, financial support, and other services as a result of Daniel's preventable death.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief:

1. For compensatory, general and special damages against each defendant, jointly and severally, in an amount according to proof;

2. For punitive and exemplary damages against each individually named defendant in an amount appropriate to punish defendants and deter others from engaging in similar misconduct;

3. For costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and as otherwise authorized by statute or law;

4. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

### REQUEST FOR JURY

Plaintiff hereby requests a jury trial in this action.

Respectfully submitted,

AGUIRRE, MORRIS & SEVERSON LLP

Dated: June 12, 2012        *s/Christopher S. Morris*
Christopher S. Morris, Esq.
Attorneys for Plaintiff

15

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS<br>SHAUNDA BRUMMETT; GREG SISSON; THE ESTATE OF DANIEL SISSON | DEFENDANTS<br>COUNTY OF SAN DIEGO; SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; WILLIAM D. GORE; DOES 1-50, inclusive |
|---|---|
| (b) County of Residence of First Listed Plaintiff  San Diego<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant _____<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| (c) Attorneys *(Firm Name, Address, and Telephone Number)*<br>Christopher S. Morris, SBN 163188, Aguirre, Morris & Severson<br>444 West C Street, Suite 210, San Diego, CA 92101, (619) 876-5364 | Attorneys *(If Known)*<br>**'12CV1428 LAB BGS** |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Med. Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition)<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district *(specify)*  ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 USC 1983

Brief description of cause:
Complaint for violation of 8th Amend-cruel and unusual punishment, 14th Amend-due process, Negligence

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE
06/12/2012

SIGNATURE OF ATTORNEY OF RECORD
*(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____